UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY OF AMERICA, ) ) ) Plaintiff, ) ) vs. ) ) HOLTZMAN PROPERTIES, L.L.C., ) ) Defendant. ) | Cause No.: 4:08-cv-00351-CAS |

**TRAVELERS INDEMNITY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE ORIGINAL EXPERT DISCLOSURE OF GERALD KRAMER AND SUPPLEMENTAL DISCLOSURE OF GERALD KRAMER OR ALTERNATIVELY MOTION TO EXTEND DISCOVERY DEADLINE AND CONTINUE TRIAL SETTING**

COMES NOW Plaintiff, Travelers Indemnity Company of America ("Travelers"), in accordance with Rule 26 of the Federal Rules of Civil procedure, and for its Memorandum of Law in Support of its Motion to Strike Gerald Kramer's Original Expert Disclosure and Supplemental Expert Disclosure or Alternatively Motion to Extend Discovery Deadline and Continue Trial Setting, states to this Court the following:

**I.    FACTUAL STATEMENT**

Holtzman has already twice required the indulgence of the Court in its disclosure of expert witnesses.  The Court's prior Scheduling Order required Holtzman to disclose its expert witnesses by February 12, 2009.  On February 26, 2009, counsel for Holtzman advised that it has inadvertently failed to make its required disclosures.  The Court granted Holtzman a one day reprieve in which to disclose its expert witnesses.  On February 27, 2009, Holtzman disclosed two experts: James Jackson of St. Louis Electric and Gerald Kramer, Holtzman's public adjuster.

On March 10, 2009, Travelers filed a Motion to Strike Expert Disclosures of James Jackson and Gerald Kramer.  Travelers requested that the Court strike James Jackson's report on the basis that it failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Travelers sought to strike Gerald Kramer's report on the basis that it merely contained legal conclusions and invaded the province of the jury.  A copy of Kramer's original report it attached hereto as Exhibit 1.  The Court granted Travelers' Motion, in part, by striking the report of James Jackson and granting Holtzman until April 29, 2009 to bring Jackson's report into compliance with Rule 26(a)(2).  Although Holtzman provided a supplemental report for Jackson, he has since been withdrawn as an expert witness.

Counsel for Travelers deposed Gerald Kramer on June 5, 2009.  During the deposition, it became apparent that Kramer's report was little more than cut and paste job, lifting entire paragraphs from Holtzman's counterclaim.  Further, Kramer testified that he based his opinions on documents that were not disclosed in his expert report.  Compounding Holtzman's failure to disclose the bases for his opinions, he additionally failed his file, or any of the documents upon which he relied in forming his opinions, to his deposition.  As a result, Kramer's deposition was largely unproductive, leaving many unanswered questions.  Holtzman's counsel promised to produce Kramer's file to counsel for Travelers immediately following the deposition.  As of June 15, 2009, ten days after Kramer's deposition and after the discovery deadline had passed, Holtzman's counsel has still failed to produce Kramer's expert file.

Instead of following through with its promise, counsel for Holtzman produced to Travelers with Kramer's supplemental report on June 15, 2009, two days before the

discovery deadline.  A copy of Kramer's supplemental report is attached hereto as Exhibit 2.  Supposedly, the supplemental report is intended to cure the defects in Kramer's original report, including new verbiage attributed to Kramer while deleting the paragraphs lifted directly from Holtzman's counterclaim.  Travelers requests that the Court strike both Kramer's original and supplemental disclosure.

## II.     LAW AND ARGUMENT

### a.  Kramer's Original Disclosure

During the course of Gerald Kramer's deposition on June 5, 2009, it became apparent that his report failed to comply with the mandates of Rule 26(a)(2)(B).  Rule 26(a)(2)(B) provides in relevant part that:

> "[D]isclosure *shall* … be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore …" (emphasis added).

The requirement of full and complete disclosure of experts, and of the opinions they hold, is not a mere recital in the litany of the pretrial schedule; rather, full and complete expert disclosures are an express requirement of Rule 26(a)(2)(B). Upsher-Smith Labs, Inc. v. Mylan Labs, Inc., 944 F.Supp. 1411 (D.Minn.1996).  Moreover, under Rule 37(c)(1), unless the non-movant can show that its failure to disclose information required by Rule 26(a)(2) was substantially justified or that such failure is harmless, exclusion of undisclosed information is automatic. 1st Source Bank v. First Resource Fed. Credit Union, 167 F.R.D. 61 (N.D.Ind. 1996).  Courts have consistently stricken expert testimony for failure to comply with Rule 26(a)(2).  See China Resource Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc., 856 F.Supp. 856, 866-67 (D.Del. 1994) (expert who did not provide report not allowed to testify); Upsher-Smith Labs., 944 F.Supp. at 1440 (striking experts whose uninformative,

boilerplate reports wholly fail[ed] to disclose, in any intelligible way, the facts and rationale … under[lying] the opinions expressed therein); and 1st Source Bank, 167 F.R.D. at 66 (precluding expert from testifying about subject merely listed in expert's report; listing subject is not the same as providing opinion and basis for opinion).

During his deposition, Kramer conceded that he failed to include the bases for his opinions in his expert report. Kramer does not include, as an exhibit to his initial report, a list of documents upon which he relied, even though he conceded in his deposition that he relied on a number of documents in forming his opinions. A copy of the rough e-transcript of Kramer's deposition is attached hereto as Exhibit 3[1], p. 57-59; Exhibit 1. However, Kramer testified that he did not believe he was required to explain the bases of his opinions because "that's what depositions are about." Exhibit 3, pp. 58-59.

Although Kramer believed that the defects in his report could be cured by way of deposition, he failed to bring a single document to his own deposition and was unable to identify all of the documents upon which he relied in forming his opinions. Kramer testified that although he kept an expert file, he did not bring his file or any of the documents contained in his file to his deposition. Exhibit 3, p. 4-6. Counsel for Holtzman advised that Kramer's file would be produced following the deposition. *Id*. As of the close of discovery, ten days after Kramer's deposition, the file was not produced. Travelers was not afforded an opportunity to examine Kramer concerning his complete findings and, more importantly, the bases therefore. Travelers was not even afforded an opportunity to ascertain which documents were relied upon in formulating his opinions. The purpose of Rule 26(a)(2)(B) is to prevent a party from concealing how an expert arrived at reported opinions.

---

[1] At the time this motion was filed, the court reported had only prepared the rough e-transcript of Kramer's deposition.

During his deposition, Kramer further conceded that his opinions amounted to ultimate conclusions of law, specifically that Holtzman was entitled to statutory penalties pursuant to Section 357.420 R.S.Mo.  Under the Federal Rules of Evidence, such opinions are inadmissible.  A trial court may exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be.  *Hogan v. AT&T*, 812 F.2d 409, 411 (8th Cir. 1987).

In *In re: Acceptance Insurance Companies Securities Litigation*, 423 F.3d 899 (8th Cir. 2005), investors brought a securities fraud action against insurer and its corporate officers.  The district court granted summary judgment for the defendants, finding that the investors would be unable to meet the scienter requirements of the relevant sections of the Exchange Act and the SEC Rules.  *Id.* at 904.  In so holding, the district court ruled that affidavits of the investor's experts were inadmissible, because the experts simply took the investor's statement of facts as true and did not review the record to ascertain whether the statements were supported.  *Id.* at 905.  The Eighth Circit affirmed the district court's holding, finding that, "[t]he opinions themselves were legal conclusions about the facts of the case as presented to the experts by the shareholders.  As a result, the expert opinions were merely opinions meant to substitute the judgment of the district court." Id. (citing *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)).  The Eighth Circuit further held that, "[w]hen the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements.  *Id.* (citing *U.S. v. Ingle*, 157 F.3d 1147, 1152 (8th Cir. 1998)).

In *J.E. Jones Const. Co. v. Marsh USA, Inc.*, 2008 WL 2225732 (E.D.Mo. 2008), a plaintiff retained an insurance broker to provide expert opinions as to whether defendant

breached its duties under an agreement between the parties. *Id*. at 1.  This Court excluded the broker's testimony because his opinions were legal conclusions which invaded the province of the jury. *Id*.  Even though the broker had years of experience and was familiar with similar agreements, he was not qualified to testify as to what constitutes a breach of a duty. *Id*.  The Court noted that broker's testimony would only serve to advise the trier of fact as to what conclusion to reach, rather than to assist the trier of fact. *Id*.

Kramer's initial expert report should be excluded pursuant to the framework set forth in *In re: Acceptance Insurance Companies Securities Litigation.*  During his deposition, it became apparent that Kramer's expert report was prepared by cutting and pasting large portions of Holtzman's counterclaim for vexatious refusal.  A copy of Kramer's expert report with portions "cut-and-paste" from Holtzman's counterclam underlined is attached hereto as Exhibit 4.  A similarly underlined copy of Holtzman's Counterclaim is attached hereto as Exhibit 5.  Having been caught, Kramer conceded that, "I may have been looking at [the Counterclaim] when I typed [the report].  Exhibit 3., p. 26.  Indeed, in formulating his opinions, Kramer not only assumed Holtzman's accounting of the facts of the case was true, but also plagerized the exact language utilized by Holtzman's counsel.  In retaining Kramer as its expert, Holtzman sought to attach the "expert" label to its own pleadings.  As such, Kramer's borrowed opinions are nothing more than legal conclusions and should be excluded.

Further, Kramer testified that his purpose in creating the report was to offer the opinion that (1) Travelers was vexatious and (2) Holtzman was entitled to a specific amount of statutory penalties.  These issues are ultimate legal conclusions that are to be determined only by the trier of facts.  Kramer's opinion was intended only to suggest the proper

outcome to the trier of fact, as is prohibited in the *J.E. Jones* opinion.  Kramer went on to testify, "I just took everything that I knew and condensed it down into this report."  Exhibit 3., p. 57.  He continued, "In fact, maybe a lot of the facts that I considered may not even be in this report…"  *Id*.  Although counsel for Holtzman previously argued that Kramer's opinions should not be excluded because they included opinions concerning standards of the insurance industry, Kramer himself testified that this was false, stating that he did not offer opinions about applicable insurance industry standards because it would have made the report too long.  Exhibit 3, pp. 57-59.

Gerald Kramer's original expert report was little more than cut and pasted legal conclusions from Holtzman's counterclaim.  Kramer failed to comply with Rule 26(a)(2)(B) when preparing his report, and Travelers requests that the Court strike his designation as an expert for Holtzman Properties, L.L.C.

### b.  Kramer's Supplemental Disclosure

Following his disastrous deposition, Holtzman provided Travelers with Kramer's supplemental expert report on June 13, 2009, a Saturday, two days before the discovery deadline in this matter expired.  In analyzing whether supplementation of expert reports should be allowed, this Court has recognized that "adherence to progression order deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.'"  *Johnson v. Board of Police Com'rs*, 2008 WL 2437963 (E.D.Mo. 2008)(quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 760 (8th Cir.2006). In determining whether a party should extend the deadlines to provide for a supplemental disclosure, the party must show good cause for the delay.  *Id*.  Such good cause must be balanced against prejudiced imposed upon the

opposing party by the delay. *Id*. "To establish good cause, a party must show its diligence in attempting to meet the progression order." *Id*.

Although Holtzman's supplementation of Kramer's expert report was submitted before the expiration of the discovery deadline, it was done in such a fashion as to prevent Travelers from redeposing Kramer or retaining rebuttal witnesses. Holtzman provided Travelers with the supplemental report on Saturday, June 13, 2009, while the discovery deadline expired Monday, June 15, 2009. Travelers inability to fully analyze the disclosure and respond as needed before the expiration of the discovery deadline has prejudiced its ability to prepare for trial.

Holtzman lacks the requisite good cause to overcome to prejudice caused by its supplementation of Kramer's report. The deadline for Kramer's disclosure was February 27, 2009, a deadline which was extended due to the failure of Holtzman to timely disclose Kramer on February 12, 2009. Holtzman had more than three months to supplement Kramer's report, but failed to do so. In *Johnson v. Board of Police Com'rs,* a plaintiff was barred from making a late supplementation to an expert report because the plaintiff did not identify any newly obtained documents that necessitated supplementation. Likewise, Kramer has not cited any newly discovered facts or documents requiring supplementation of his opinions. Instead, the supplemental report was only prepared following Kramer's poor deposition performance, in which it became obvious that his opinions were little more than legal conclusions and the report itself failed to comply with the mandates of Rule 26(a)(2)(B).

Holtzman has not shown any good cause for allowing its late supplementation, two days before the expiration of the discovery deadline and after Kramer had already

been deposed by Travelers. Further, permitting Holtzman's attempted supplementation will unduly prejudice Travelers, in that Holtzman waited to supplement until it was too late to redepose Kramer and select rebuttal experts, if necessary.

### III.   CONCLUSION

The reasons why the Court should strike Kramer's original expert report establish why the Court should deny Holtzman's attempt to supplement Kramer's opinions at the last minute before the discovery deadline passed. Kramer's original report did not relate to insurance industry standards, but instead was intended for the sole purpose of suggesting the proper verdict to the trier of fact. Kramer's opinions were hardly his own, but were cut and pasted from Holtzman's counterclaim. After these glaring defects were exposed during Kramer's deposition, Holtzman attempted its untimely supplementation to rehabilitate its expert witness. "Good cause" for supplementation does not include remedying the expert's failure to comply with Rule 26(a)(2)(B) after the deadline to disclose experts had expired.

Alternatively, if the Court declines to strike Kramer's supplemental report, Travelers requests that the Court reopen discovery in order to permit it to consult with its own expert witnesses concerning Kramer's new report, redepose Kramer concerning the supplemental report, and either supplement its own experts' reports or retain a rebuttal expert.

WHEREFORE, Travelers Indemnity Company of America respectfully requests that the Court strike Gerald Kramer's original expert report for its failure to comply with the mandates of Fed.R.Civ.P. 26(a)(2)(B) and strike Holtzman Properties, L.L.C.'s attempt to supplement Kramer's expert report as untimely and without good cause.

Alternatively, Travelers requests that the Court reopen discovery to permit Travelers to redepose Gerald Kramer and retain expert witnesses or supplement its experts' reports, if necessary.

                                                  Respectfully submitted,

                                                  */s/ Robert W. Cockerham*____
                                                  Robert W. Cockerham, #2832
                                                  BROWN & JAMES, P.C.
                                                  Attorneys for Plaintiff
                                                  1010 Market Street, 20th Floor
                                                  St. Louis, MO 63101
                                                  314-421-3400
                                                  314-421-3128 FAX
                                                  rcockerham@bjpc.com

## CERTIFICATE OF SERVICE

     A I hereby certify that on June 22, 2009, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing service on the following:  Mr. Mark M. Silvermintz, The Kunin Law Offices, L.L.C., 412 Missouri Avenue, East St. Louis, Illinois 62201, *Co-Counsel for Defendant-Counterplaintiff*, and Mr. William S. Daniel, Daniel Law Offices, 1116 Culverhill Drive, St. Louis, Missouri 63119-4938, *Co-Counsel for Defendant-Counterplaintiff*.

                                                  */s/ Robert W. Cockerham*____